**BRODSKY & SMITH, LLC**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HASSAN ERGENE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AQUANTIA CORP., FARAJ AALAEI, LIP-BU TAN, DMITRY AKHANOV, BAMI BASTANI, KEN PELOWSKI, GEOFFREY G. RIBAR, SAM SRINIVASAN, and ANDERS SWAHN,<br><br>Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Hasan Ergene ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

### SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of Aquantia Corp., ("Aquantia" or the "Company"), against Aquantia and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to Marvell Technology Group Ltd. ("Parent"), and Antigua Acquisition Corp.,

("Merger Sub," collectively with Parent, "Marvell") as a result of an unfair process for an unfair price, and to enjoin an upcoming stockholder vote on a proposed all cash transaction valued at approximately $452 million (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a May 10, 2019, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger Agreement, Merger Sub will merge with and into the Company with the Company continuing as the surviving entity. Aquantia stockholders will receive $13.25 in cash for each share of Aquantia common stock they own.  As a result of the Proposed Transaction, Plaintiff and other Aquantia stockholders will be frozen out of any future ownership interest in the Corporation.

3.      Thereafter, on May 29, 2019, Aquantia filed a Preliminary Proxy Statement on Schedule 14A (the "Preliminary Proxy") with the SEC in support of the Proposed Transaction

4.      The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Preliminary Proxy describes an insufficient sales process in which the Board rushed through an inadequate "sales process" in which the only end goal was a sale to Marvell, and in which no disinterested committee of Aquantia directors was created to run the sales process

5.      Such a sales process, or lack thereof, clearly indicates that the only end-goal acceptable to the Defendants was an acquisition of Aquantia by Marvell.

6.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Aquantia without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Marvell without regard for Aquantia public stockholders.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Aquantia stockholders.

7.     Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.  Moreover, certain Directors and other insiders will also be the recipients of lucrative change-in-control agreements, triggered upon the termination of their employment as a consequence of the consummation of the Proposed Transaction.

8.     In violation of sections 14(a) and 20(a) of the Exchange Act, and in further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy on May 29, 2019 with SEC in an effort to solicit stockholders to vote their Aquantia shares in favor of the Proposed Transaction.  The Preliminary Proxy is materially deficient, deprives Aquantia stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction, and is thus in breach of the Defendants fiduciary duties.  As detailed below, the Preliminary Proxy omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Aquantia, provided by Aquantia to the Company's financial advisor Barclays Capital Inc. ("Barclays") for use in its financial analyses; and (c) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by the Company's financial advisors, Barclays.

9.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

CLASS ACTION COMPLAINT

## PARTIES

10.     Plaintiff is a resident of California and, at all times relevant hereto, has been an Aquantia stockholder.

11.     Defendant Aquantia, together with its subsidiaries, designs, develops, and markets advanced high-speed communication integrated circuits for Ethernet connectivity in the data center, enterprise infrastructure, access, and automotive markets worldwide. Aquantia is incorporated under the laws of the State of Delaware and has its principal place of business at 91 East Tasman Drive, San Jose, CA 95134.  Shares of Aquantia common stock are traded on the NYSE under the symbol "AQ."

12.     Defendant Faraj Aalaei ("Aalaei") has been a Director of the Company at all relevant times.  In addition, Aalaei serves as Chairman of the Company Board (since 2016) and the Company's President and Chief Executive Officer ("CEO") (since 2009).

13.     Defendant Lip-Bu Tan ("Tan") has been a director of the Company at all relevant times.  In addition, Tan serves as the Board's Lead Director.

14.     Defendant Dmitry Akhanov("Akhanov") has been a director of the Company at all relevant times.

15.     Defendant Dr. Bami Bastani ("Bastani") has been a director of the Company at all relevant times.

16.     Defendant Ken Pelowski ("Pelowski") has been a director of the Company at all relevant times.

17.     Defendant Geoffrey G. Ribar ("Ribar") has been a director of the Company at all relevant times.

18.     Defendant Sam Srinivasan ("Sriivasan") has been a director of the Company at all relevant times.

19.     Defendant Anders Swahn ("Swahn") has been a director of the Company at all relevant times.

CLASS ACTION COMPLAINT

20.    Defendants identified in ¶¶ 12 - 19 are collectively referred to as the "Individual Defendants."

21.    Non-Defendant Marvell Corporation is a digital storage and semiconductor company.

22.    Non-Defendant Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

24.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Aquantia has its principal place of business is located in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

26.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23, as a class action individually and on behalf of all holders of Aquantia common stock who are being and will be harmed by the Individual Defendants' actions, described herein (the "Class"). Excluded from the Class are Defendants and any person, firm, trust, corporation or other entity related to or affiliated with any Defendant.

27.    This action is properly maintainable as a class action because, *inter alia:*

a. The Class is so numerous that joinder of all members is impracticable.  As of May 3, 2019, there were over 35.5 million shares of Aquantia common stock outstanding.  Aquantia stock is publicly traded on the NYSE and Plaintiff believes that there are hundreds if not thousands of holders of such shares.  Moreover, the holders of these shares are geographically dispersed throughout the United States;

b. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  These common questions include, *inter alia*: (i) whether the Individual Defendants have engaged in self-dealing, to the detriment of Aquantia public stockholders; (ii) whether the Proposed Transaction is unfair to the Class, in that the price is inadequate and is not the fair value that could be obtained under the circumstances; and (iii) whether the Class is entitled to injunctive relief and/or damages as a result of the wrongful conduct committed by Defendants;

c. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  The claims of Plaintiff are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class;

d. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct

for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; and

e.  Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class and, therefore, preliminary and final injunctive relief on behalf of the Class as a whole is appropriate.

### THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

28.  By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Aquantia and owe the Company the duties of due care, loyalty, and good faith.

29.  By virtue of their positions as directors and/or officers of Aquantia, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Aquantia to engage in the practices complained of herein.

30.  Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.  act with the requisite diligence and due care that is reasonable under the circumstances;

b.  act in the best interest of the company;

c.  use reasonable means to obtain material information relating to a given action or decision;

d.  refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

CLASS ACTION COMPLAINT

e.   avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f.   disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

31.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Aquantia, are obligated to refrain from:

a.    participating in any transaction where the directors' or officers' loyalties are divided;

b.    participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

c.    unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

32.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Aquantia, Plaintiff and the other public stockholders of Aquantia, including their duties of loyalty, good faith, and due care.

33.    As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Aquantia common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

34.    Aquantia is a leader in the design, development and marketing of advanced high-speed communications integrated circuits, or ICs, for Ethernet connectivity in the data center, enterprise infrastructure, access and automotive markets.

35.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in an October 25, 2018 press release announcing its Q3 2018 financial results, the Company highlighted such milestones as revenue of $32.9 million, an increase of 8 percent sequentially and 23 percent year-over-year.

36.     Speaking on these positive results, CEO Defendant Aalaei stated, "[t]he strong results we have seen in this third quarter prove that we are executing on our diversification strategy. Strong customer demand in Data Center and Enterprise Infrastructure drove top-line growth in the third quarter." He further stated, "[t]he uptick on the automotive front was a result of the activity we experienced from partners deploying test programs in anticipation of mass deployments over the next few years."

37.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success by Aquantia.  Clearly, based upon these positive financial results, the Company is likely to have tremendous future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

38.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Aquantia to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

39.     As detailed in the Preliminary Proxy, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company to Marvell.

40.     First, it appears that an inadequate market check was conducted by Company and its financial advisors during the sales process.  Notably, it does not appear that any financial sponsors were contacted during the sales process.

41.     In addition, while the Preliminary Proxy indicates that a "Transaction Committee" created to run the sales process, it is clear that the Transaction Committee was only created to allow the Board to appear as if they were actually complying with their fiduciary duties. Most telling is that the Transaction Committee, rather than being made up of independent board members, in fact had Defendant Aalaei, the Company's CEO and inside director, sitting on it. Defendant Aalaei stands to reap enormous personal benefits from the consummation of the Proposed Transaction and his placement on the Transaction Committee effectively nullified any semblance of its supposed "independence."

42.     This lack of independence is exacerbated both the fact that Marvell had made overtures directly to Defendant Aalaei during the sales process, ensuring him of personal employment benefits during the bidding stages of the sales process, and by the fact that Defendant Aalaei stands to personally profit from the consummation of Proposed Transaction in an amount of approximately $30 million.

43.     The Preliminary Proxy is also unclear as to the nature of any specific standstill restrictions arising out of the terms of any of the non-disclosure agreements entered into between Aquantia on the one hand and any interested third party, including Marvell, on the other, and if the terms of any included "don't-ask, don't-waive" provisions or standstill provisions in any such agreements, and if so, the specific conditions, if any, under which such provisions would fall away

44.     Moreover, the Preliminary Proxy is also unclear as to any differences that may exist between the various non-disclosure agreements entered into between Aquantia and any interested third parties.

45.     The Preliminary Proxy is also unclear as to why the initial non-disclosure agreement entered into between Aquantia and Marvell did not contain a standstill provision, or the specific reasoning for its later amendment to include one.

46.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

1  *The Proposed Transaction*

2      47.    On March 27, 2019, Marvell and Aquantia issued a press release announcing the

3  Proposed Transaction.  The press release stated, in relevant part:

4      SANTA CLARA, Calif. and SAN JOSE, Calif., May 6, 2019 /PRNewswire/ --
       Marvell Technology Group Ltd. (NASDAQ: MRVL), a leader in infrastructure
5      semiconductor solutions, and Aquantia, Corp. (NYSE: AQ), a leader in Multi-Gig
       Ethernet connectivity, today announced a definitive agreement, approved by the
6      boards of directors of both companies, under which Marvell will acquire all
       outstanding shares of Aquantia common stock in exchange for consideration
7      of $13.25 per share in cash.

8      The acquisition of Aquantia complements Marvell's portfolio of copper and optical
       physical layer product offerings and extends its position in the Multi-Gig
9      2.5G/5G/10G Ethernet segments.  In particular, Aquantia's innovative Multi-gig
       automotive PHYs, coupled with Marvell's industry-leading gigabit PHY and secure
10     switch products, creates the broadest and most advanced range of high-speed in-car
       networking solutions in the world.  This unique combination accelerates Marvell's
11     vision for the future of automotive networking with speeds necessary to enable
       level 4 and 5 autonomous driving.

12
       As the automotive industry increasingly adopts Ethernet in-vehicle networks for
13     mainstream models, the number of related ports is expected to grow dramatically
       at a 62% annualized growth trajectory, from 53 million in 2018 to 367 million by
14     2022[1].

15     "Our acquisition of Aquantia will fuel Marvell's leadership in the transformation of
       the in-car network to high-speed Ethernet over the next decade," said Matt Murphy,
16     president and CEO of Marvell.  "At the same time, Aquantia extends our reach in
       the rapidly emerging Multi-Gig segment of network infrastructure and creates a
17     leading end-to-end Ethernet connectivity portfolio."

18     "Marvell and Aquantia share a vision where the network – whether in an
       autonomous vehicle, an enterprise application or in cloud infrastructure – can
19     seamlessly power the data economy," said Faraj Aalaei, chairman and CEO of
       Aquantia. "This is a fantastic opportunity as our customers will benefit from
20     Marvell's global scale and expanding footprint in Multi-Gig network applications."
       The transaction is expected to be immediately accretive to Marvell's non-GAAP
21     earnings per share and generate significant annual run-rate synergies of $40
       million to be realized within 12 months after the transaction closes.
22     [1]Source: Strategy Analytics

23     **Transaction Structure and Terms**
       Under the terms of the definitive agreement, Marvell will pay Aquantia's
24     stockholders $13.25 per share in cash.  This represents approximately $452
       millionin transaction value after adjusting for net cash on Aquantia's balance
25     sheet.  Marvell intends to finance the transaction with cash on hand and revolver
       borrowings.  The transaction is not subject to any financing condition and is
26     expected to close by the end of CY2019, subject to regulatory approval as well as
       other customary closing conditions, including the adoption by Aquantia's
27     stockholders of the merger agreement.

28

CLASS ACTION COMPLAINT

In connection with the execution of the definitive agreement, certain stockholders of Aquantia, together holding approximately 17 percent of the outstanding shares of common stock of Aquantia, have agreed to vote their shares in favor of the transaction under a voting and support agreement.

### The Inadequate Merger Consideration

48.     Significantly, the Company's financial prospects, opportunities for future growth, and synergies with Marvell establish the inadequacy of the merger consideration.

49.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company. The proposed valuation does not adequately reflect the intrinsic value of the Company. Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key financial improvements of the Company in recent years.

50.     For example, as shown above Aquantia's future success is extremely likely, given the consistent positive financial results it has posted over the past several quarters. Obviously, the opportunity to invest in such a company on the rise is a great coup for Marvell, however it undercuts the investment of Plaintiff and all other public stockholders.

51.     Moreover, the Proposed Transaction represents a significant synergistic benefit to Marvell, which operates in the same industry as Aquantia, and will use the new assets, operational capabilities, and brand capital to bolster its own position in the market. Specifically, Matt Murphy, President and CEO of Marvell stated in the press release announcing the Proposed Transaction, "Our acquisition of Aquantia will fuel Marvell's leadership in the transformation of the in-car network to high-speed Ethernet over the next decade." "At the same time, Aquantia extends our reach in the rapidly emerging Multi-Gig segment of network infrastructure and creates a leading end-to-end Ethernet connectivity portfolio."

52.     Clearly, while the deal will be beneficial to Marvell it comes at great expense to Plaintiff and other public stockholders of the Company.

53.     Moreover, post-closure, Aquantia stockholders will be frozen out of any ownership interest in the Company, forever foreclosing the ability to see the true return on their investments.

CLASS ACTION COMPLAINT

54.    It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Marvell at the expense of Aquantia stockholders, which clearly indicates that Aquantia stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

55.    The Merger Agreement contains certain provisions that unduly benefit Marvell by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that is especially onerous and impermissible.  Notably, in the event of termination, the merger agreement requires Aquantia to pay up to $16.45 million to Marvell, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, Aquantia must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

56.    The Merger Agreement also contains a "No Solicitation" provision that restricts Aquantia from considering alternative acquisition proposals by, *inter alia*, constraining Aquantia's ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"Acquisition Proposal"* if it constitutes or is reasonably calculated to lead to a "*Superior Offer*" as defined in the Merger Agreement.

57.    Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide Marvell information in order to match any other offer, thus providing Marvell access to the unsolicited

CLASS ACTION COMPLAINT

bidder's financial information and giving Marvell the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Marvell.

58.    Additionally, Defendants Aalaei and Tan, along with several other institutional holders, defined in the Merger Agreement as the "Supporting Stockholders," entered into Voting Agreements and Support Agreements with respect to over 4.7 million shares of Company stock – representing over 13% of the Company's outstanding stock.  Having tied up these shares, the deal moves closer to a fait accompli.

59.    These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

60.    Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

61.    The breakdown of the benefits of the deal indicate that Aquantia insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Aquantia.

62.    Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction.  Notably, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be exchanged for large cash pay days upon the consummation of the Proposed Transaction, as follows:

| Name | Number of Shares Beneficially Owned | Merger Consideration for Shares Beneficially Owned |
|---|---|---|
| **Executive Officers** | | |
| Faraj Aalaei | 1,295,487 | $17,165,203 |
| Mark Voll | 53,919 | $   617,384 |
| Pirooz Parvarandeh | 19,125 | $   253,406 |

| | | |
|---|---:|---:|
| David Quarles | — | $ — |
| Kamal Dalmia | 168,777 | $ 2,236,295 |
| **Directors** | | |
| Dmitry Akhanov | 9,847 | $ 130,473 |
| Bami Bastani | 12,242 | $ 162,207 |
| Ken Pelowski | 157,772 | $ 2,090,479 |
| Geoffrey G. Ribar | 3,347 | $ 44,348 |
| Sam Srinivasan | 247,944 | $ 3,285,258 |
| Anders Swahn | — | $ — |
| Lip-Bu Tan | 2,693,979 | $35,695,222 |
| **All of our current directors and executive officers as a group (12 persons)** | 4,662,439 | $61,680,274 |

63.     Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option or equity award, will be canceled and converted into the right to receive certain consideration according to the merger agreement.  The individual Defendants and other Company insiders will receive consideration as a consequence of these options, not shared amongst Plaintiff and other members of the class, as follows:

| Name | Number of Company Options | Number of Company RSUs | Value of Company Options and Company RSUs ($) |
|---|---:|---:|---:|
| **Executive Officers** | | | |
| Faraj Aalaei | 473,204 | 342,500 | $  9,196,749 |
| Pirooz Parvarandeh | 85,816 | 106,546 | $  2,107,637 |
| Mark Voll | — | 155,463 | $  2,059,885 |
| David Quarles | — | 100,000 | $  1,325,000 |
| Kamal Dalmia | — | — | $  — |
| **Directors** | | | |
| Dmitry Akhanov | — | 5,181 | $  68,648 |
| Bami Bastani | — | 5,181 | $  68,648 |
| Ken Pelowski | — | 5,181 | $  68,648 |
| Geoffrey G. Ribar | — | 5,181 | $  68,648 |
| Sam Srinivasan | 8,000 | 5,181 | $  139,448 |
| Anders Swahn | 38,000 | 5,181 | $  472,448 |
| Lip-Bu Tan | — | 5,181 | $  68,648 |
| **All of our current directors and executive officers as a group (12 persons)** | 605,020 | 740,776 | $  15,644,407 |

64.     Moreover, certain employment agreements with certain Aquantia executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or

officer entitled to them millions of dollars, compensation not shared by Aquantia's common stockholders.

65. These payouts will be paid to Aquantia insiders, as a consequence of the Proposed Transaction's consummation, as follows:

| Name | Cash ($)[2] | | Equity ($)[3] | | Perquisites/ Benefits ($)[4] | | Total ($)[5] | |
|------|-----|---|--------|---|--------|---|-------|---|
| Faraj Aalaei | $ | 675,000 | $ | 3,279,375 | $ | 40,428 | $ | 3,994,803 |
| Pirooz Parvarandeh | $ | 335,000 | $ | 1,151,014 | $ | 218,470 | $ | 1,704,484 |
| Mark Voll | $ | 300,000 | $ | 1,549,817 | $ | 28,980 | $ | 1,878,797 |
| David Quarles | $ | 137,500 | $ | 414,063 | $ | 13,200 | $ | 564,763 |

66. Thus, while the Proposed Transaction is not in the best interests of Aquantia stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy***

67. On May 29, 2019, the Aquantia Board and Marvell caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy that, in violation their fiduciary duties, failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process Leading Up to the Proposed Transaction*

68. Specifically, the Preliminary Proxy fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy fails to disclose:

a. The nature of any specific standstill restrictions arising out of the terms of any of the non-disclosure agreements entered into between Aquantia on the one hand and any interested third party, including Marvell, on the other, and if the terms of any included "don't-ask, don't-waive" provisions or standstill

provisions in any such agreements, and if so, the specific conditions, if any, under which such provisions would fall away;

b.   The nature of any differences that exist between the various non-disclosure agreements entered into between Aquantia and any interested third parties;

c.   The specific reasoning as to why the initial non-disclosure agreement entered into between Aquantia and Marvell did not contain a standstill agreement;

d.   The specific reasoning as to why the initial non-disclosure agreement entered into between Aquantia and Marvell, that did not contain a standstill agreement, was later amended to include a standstill agreement;

e.   The effect of the non-disclosure agreement between Aquantia and a subsidiary of Marvell had on Defendant Aalaei's discussions with agents of Marvell on February 21, 2019;

f.   The reasoning as to why no financial sponsors were contacted during the market check;

g.   The specific reasoning as to why Defendant Aalaei was allowed to be on the Transaction Committee and to run the sales process given his conflicted nature;

*Omissions and/or Material Misrepresentations Concerning Aquantia's Financial Projections*

69.    The Preliminary Proxy fails to provide material information concerning financial projections provided by Aquantia's management and relied upon by Barclays in its analyses.  The Preliminary Proxy discloses management-prepared financial projections for the Company which are materially misleading.  The Preliminary Proxy indicates that in connection with the rendering of Barclays' fairness opinions, Barclays "reviewed and analyzed financial and operating information with respect to the business, operations and prospects of Aquantia furnished to Barclays by Aquantia, including updated financial projections of Aquantia prepared by Aquantia's management and provided to Barclays."  Accordingly, the Preliminary Proxy should have, but fails to provide, certain information in the projections that Aquantia management provided to the

Board and Barclays.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

70.    With respect to the "Updated Management Projections", the Preliminary Proxy fails to provide material information concerning the financial projections prepared by Aquantia management.  Specifically, the Preliminary Proxy fails to disclose material line items for EBITDAS and NOPAT.

71.    Further, the Preliminary Proxy provides non-GAAP financial metrics, including EBITDAS, but fails to disclose a reconciliation of all non-GAAP to GAAP metrics. Also, to the extent NOPAT is not GAAP compliant, then a further reconciliation is necessary. Finally, the Preliminary Proxy fails to reconcile Unlevered Free Cash Flow ("UFCF") to its most comparable GAAP measure.

72.    This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

73.    Without accurate projection data presented in the Preliminary Proxy, Plaintiff and other stockholders of Aquantia are unable to properly evaluate the Company's true worth, the accuracy of Barclay's financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Barclays*

74.    In the Preliminary Proxy, Barclays describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to

include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

75.    With respect to the *Selected Comparable Companies Analysis*, the Preliminary Proxy fails to disclose the following:

a.    Why only seven companies were chosen to compare, one of which was Marvell;

76.    With respect to the *Comparable Company Discounted Equity Value Analysis*, the Preliminary Proxy fails to disclose the following:

a.    The specific inputs and assumptions used to calculate the Aquantia's cost of equity of 16.0%;

77.    With respect to the *Precedent Transactions Analysis*, the Preliminary Proxy fails to disclose the following:

a.    The total value of each selected transaction;

b.    The specific date on which each selected transaction closed;

78.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy fails to disclose the following:

a.    The specific inputs and assumptions used to calculate the discount rate range of 14.5% to 16.0%;

b.    The specific inputs and assumptions used to calculate range of NTM adjusted EBITDAS exit multiples of 9.0x to 11.0x;

c.    The specific inputs and assumptions used to calculate the perpetuity growth rates range of 3.0% to 5.0%

79.    With respect to the *Transactions Premium Analysis*, the Preliminary Proxy fails to disclose the following:

a.    The names of the entities involved in each of the analyzed transactions;

b.    The dates on which the transactions closed;

c.    The specific premiums paid in each of the transactions.

80.    These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

81.    Without the omitted information identified above, Aquantia's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.   Moreover, without the key financial information and related disclosures, Aquantia's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.   As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Stockholders.

## FIRST COUNT

### Claim for Breach of Fiduciary Duties

### (Against the Individual Defendants)

82.    Plaintiff repeats all previous allegations as if set forth in full herein.

83.    The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders.

84.    By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Aquantia.

85.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Aquantia by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Aquantia to its public stockholders.

86.    Indeed, Defendants have accepted an offer to sell Aquantia at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

87.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

88.     The Individual Defendants dominate and control the business and corporate affairs of Aquantia, and are in possession of private corporate information concerning Aquantia's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Aquantia which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

89.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

90.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Aquantia's assets and have been and will be prevented from obtaining a fair price for their common stock.

91.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

92.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

**SECOND COUNT**

**Aiding and Abetting the Board's Breaches of Fiduciary Duty**

**<u>Against Defendant Aquantia</u>**

93.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

94.     Defendant Aquantia, knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Acquisition, which, without such aid, would not have occurred.

95.     As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

96.     Plaintiff and the members of the Class have no adequate remedy at law.

### THIRD COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

97.     Plaintiff repeats all previous allegations as if set forth in full herein.

98.     Defendants have disseminated the Preliminary Proxy with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

99.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

100.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any

CLASS ACTION COMPLAINT

material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

101.    The Preliminary Proxy was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

102.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

103.    The Individual Defendants were at least negligent in filing a Preliminary Proxy that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy not misleading.

104.    The misrepresentations and omissions in the Preliminary Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to vote its shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**FOURTH COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against All Individual Defendants)**

105.    Plaintiff repeats all previous allegations as if set forth in full herein.

106.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and

Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy was materially misleading to Company stockholders.

107.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

108.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Aquantia's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Preliminary Proxy was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy and are therefore responsible and liable for the misrepresentations contained herein.

109.    The Individual Defendants acted as controlling persons of Aquantia within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Aquantia to engage in the wrongful

conduct complained of herein. The Individual Defendants controlled Aquantia and all of its employees. As alleged above, Aquantia is a primary violator of Section 14 of the Exchange Act and SEC Rule Preliminary Proxy. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.    Enjoining the Proposed Transaction;

C.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.    Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Aquantia and obtain a transaction which is in the best interests of Aquantia and its stockholders;

F.    Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.    Awarding Plaintiff, the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.    Granting such other and further relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: June 11, 2019

**BRODSKY & SMITH, LLC**

By: _____
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT